Argued March 3, affirmed April 4, 1972

RICCAR AMERICA COMPANY, *Respondent, v.*
DANIELS, *Appellant.*

495 P2d 708

*Charles W. Creighton, Jr.,* Salem, argued the cause
and filed a brief for appellant.

*Norman Wapnick,* Portland, argued the cause for

respondent. With him on the brief were Sussman, Shank & Wapnick, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, and BRYSON, Justices.

BRYSON, J.

This is an action at law on a written guaranty. The case was tried to the court without a jury and judgment was entered in favor of the plaintiff. Defendant appeals.

The defendant signed a guaranty for goods delivered to National Appliance Acceptance, Inc. (hereinafter referred to as NAAI). NAAI, an Oregon corporation, was organized to operate as a sales organization in Oregon and to purchase sewing machines from the plaintiff at an agreed price of $50 per sewing machine. NAAI estimated it would sell 200 machines per month at a cost to NAAI of $50 per machine and that it would require an initial line of credit of $10,000 from the plaintiff. Before the plaintiff would agree to extending $10,000 worth of credit to NAAI, it required a personal written guaranty from certain directors of NAAI.

The defendant, an attorney, officer, and director of NAAI, prepared the written guaranties, including the one involved in this litigation. The defendant, in preparation of the guaranty, executed the same and forwarded it to the plaintiff. It provided:

## "GUARANTY

"In consideration of Riccar American Company, hereinafter called Riccar, extending credit to National Appliance Acceptance Inc., hereinafter

called the dealer, in an amount not to exceed ten thousand ($10,000.00) dollars under terms whereby a minimum of 70% of any invoiced amount shall be paid to Riccar within 30 days of receipt of goods, and the remaining 30% of any invoiced amount to be paid not later than 60 days from receipt of Merchandise, I, JAMES B. DANIELS, hereby unconditionally guarantee the payment of any bills incurred by dealer with Riccar as above stated to a limit of SIX THOUSAND ($6,000.00) DOLLARS.

"* * * that Riccar may regard each guaranty on an individual basis and is not required to pro rate or apportion any deficit between guarantors in any manner whatever * * *.

"It is understood that this guaranty shall terminate under any of the following conditions:

"(1) At the expiration of six months from date as to any merchandise purchased after that date.

"(2) Upon dealers' financial position becoming such that Riccar releases all guarantors.

"(3) Upon dealer going on a cash pay basis with no obligations outstanding, and Riccar being notified of this position."

Following receipt of the guaranties, plaintiff sold and delivered machines to NAAI. The sales extended from January 11, 1968, to May 24, 1968. Plaintiff extended credit beyond $10,000 and, after March 11, 1968, did not adhere to the terms: 70 percent within 30 days and the balance within 60 days. When this action was filed NAAI was indebted to plaintiff in the sum of $7,997.57.

Defendant assigns as error that "[t]he trial court erred in ruling that the guaranty containing limits on the credit to be advanced to the dealer and terms of payment was an absolute guaranty rather than a conditional guaranty."

The trial court rendered a written memorandum opinion and found that the first paragraph of the guaranty "does not contain terms of condition of liability but of limitation of liability. In reading the whole instrument it appears that the first paragraph is the extension of a promise of guaranty for and in consideration of extension of credit by plaintiff to the National Appliance Acceptance, Inc., that the conditions of termination are contained in the last paragraph, and there is no provision in the last paragraph providing for termination in the event that plaintiff shall fail to insist upon compliance with the provisions of payment as set forth in the first paragraph."

We agree with the trial court that the language as to credit in the first paragraph of the written guaranty does not contain terms of condition of liability. The language, "$6,000.00," sets the limit on the guarantor's liability.

In this case the written guaranty containing limits on credit to be advanced to a dealer does not make the guarantor's liability conditional. This is particularly true under the terms of the specific written guaranty herein involved. That is to say that under the terms of this guaranty we hold that the defendant-guarantor is not discharged by an extension of credit by plaintiff to NAAI in excess of the amount of $10,000.

"The general rule is that in the absence of the expression of a contrary intention, the specification of the amount of credit to be extended, and, a fortiori, the specification of a maximum amount of the guaranty, is *indicative of an intention to limit the amount* of the guarantor's liability, and not to limit the amount of the net credit which may be extended to the debtor, as a condition of any liability at all on the part of the

guarantor." Annot., Guarantor-Release-Excess Credit, 57 ALR2d 1209, 1211-212 (1958). This is the rule adopted by a large majority of the courts in other states.

In addition to containing the language that the defendant unconditionally guaranteed the payment of sums incurred by the dealer from the plaintiff to a limit of $6,000, the written guaranty specifically provides how the guaranty agreement is to be terminated and under what conditions. No mention was made of terminating liability on the part of the defendant if more than $10,000 credit was advanced by plaintiff to NAAI.

In *Bank of America etc. Assn. v. Sage,* 13 Cal App 2d 171, 175-76, 56 P2d 565, 567-68 (1936), the court considered this same question and held:

"The guaranty set forth herein is in a very unusual form, and we have not been cited to any case in which a similar contract of guaranty has been in controversy. We construe said guaranty to mean only that the defendant guaranteed any sum not exceeding the sum of $75,000, loaned by plaintiff to the Beverly Bond and Mortgage Company, Inc., and that the wording used in said guaranty merely *limits* the liability of the defendant to the sum of $75,000 under any circumstance.

"If it had been intended by defendant that at no time should the bank allow any credit to the Beverly Bond and Mortgage Company, Inc., in a sum in excess of $75,000, and that in such case there should be no liability for any past or future indebtedness, it must be assumed that the parties would have expressly so stated in their contract, and therein would have provided that in case of any such indebtedness of said Beverly Bond and Mortgage Company, Inc., to the bank, then the guaranty would be of no force or effect and should

be immediately canceled. There is nothing in this contract to show that such was the intention of the parties, all of the limiting clauses of the guaranty being merely a restriction of the total liability of the defendant at any time to a sum not to exceed $75,000."

Also, in *American Tobacco Co. v. Chalfen*, 260 Minn 79, 108 NW2d 702 (1961), the promise, contained in the guaranty, provided that the guarantor would pay for goods sold to the debtor " 'on ten days worth of credit, * * * not to exceed $20,000.00." The court held that the language in the guaranty, "on ten days worth of credit, * * * not to exceed $20,000.00'," merely limited the guarantor's liability and did not condition guaranty on amount or terms of credit extended.

Testimony shows that normally the plaintiff extended only 30 days of credit to its dealers such as NAAI, but in this instance NAAI was a new corporation and desired additional terms. They had no past performance records on which to estimate how many sewing machines they would sell per month. It was NAAI that requested the additional extension of credit and this was granted by the plaintiff only on the condition that a written guaranty by certain of the directors of the corporation be provided. The defendant prepared the guaranties, executed the one involved in the present litigation, and forwarded the same to the plaintiff's principal office in Los Angeles, California. As there is nothing in the written guaranty to evidence a contrary intent, we construe the limits provided therein to merely establish the defendant's maximum liability.

Affirmed.